IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Heather Nicole Davis, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Jasper County, )<br>)<br>Defendant. )<br>_____ ) | Civil Action No. 9:21-cv-03964-BHH<br><br>**Opinion and Order** |

Plaintiff Heather Nicole Davis ("Plaintiff") filed the instant action against Defendant Jasper County ("Jasper County" or "County"), alleging violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (ECF No. 1.) Plaintiff is a former employee of Jasper County's county-wide combination fire and rescue service. During her employment, she was a certified firefighter and paramedic, and her official title was "Firefighter/Paramedic." According to Plaintiff, "only a sliver [of her job] was fire-related and only a few [of the calls that she responded to] were situations where life, property or environment were at risk." (ECF No. 40 at 5.) Plaintiff contends that her simultaneous and majority service as emergency medical personnel defeats the partial exemption from the FLSA's overtime requirements for "employee[s] in fire protection services," 29 U.S.C. § 207(k), entitling her to overtime pay for all hours worked each week in excess of 40.

Jasper County paid its fire and rescue personnel under the FLSA's partial exemption from overtime for "employee[s] in fire protection activities." § 207(k). Pursuant to that plan, the County paid Plaintiff overtime after she worked 53 hours in a workweek, instead of after 40 hours in a workweek. The County contends that Plaintiff's testimony

establishes that she meets the definition of an "employee in fire protection activities" under the plain language of the FLSA and, thus, the partial exemption applied to her during her employment.

Presently before the Court are the parties' cross-motions for summary judgment. (ECF Nos. 39, 40.) Each party filed a response in opposition and a reply. (ECF Nos. 41, 42, 43, 44.) Thus, the motions are now ripe for disposition.

For the reasons set forth below, the Court denies Plaintiff's motion for summary judgment and grants Jasper County's motion for summary judgment.

## STANDARD OF REVIEW

To grant a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 124 (4th Cir. 1990). "[I]t is ultimately the nonmovant's burden to persuade [the court] that there is indeed a dispute of material fact. It must provide more than a scintilla of evidence—and not merely conclusory allegations or speculation—upon which a jury could properly find in its favor." *CoreTel Va., LLC v. Verizon Va., LLC,* 752 F.3d 364, 370 (4th Cir. 2014) (citations omitted). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 119 (4th Cir.1991). Summary judgment is not "a disfavored procedural shortcut," but an important

2

mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986).

## DISCUSSION

Both parties assert that the evidence establishes whether the FLSA section 207(k) exemption applies as a matter of law. "In FLSA exemption cases, the question of how employees spend their working time is a question of fact, but the ultimate question of whether the exemption applies is a question of law*." Calderon v. GEICO Gen. Ins. Co*., 809 F.3d 111, 120 (4th Cir. 2015) (citations and internal quotation marks omitted). With respect to the underlying facts, the employer has the burden of establishing that an exemption applied by a preponderance of the evidence. *See Roy v. Cnty. Of Lexington*, 141 F.3d 533, 540 (4th Cir.1998). Although the Supreme Court previously held that FLSA "exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit," *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, (1960), more recently the Court determined the exemptions should instead be given a "fair reading." *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89-90 (2018).

The FLSA imposes certain overtime pay requirements on employers of non-exempt employees. 29 U.S.C. § 207(a). Section 207(k) partially exempts certain employers of employees "in fire protection activities" from this overtime pay requirement, imposing an increased overtime threshold over a longer work period of seven to twenty-eight days. The First Circuit Court of Appeals has explained the purpose and effect of the Section 207(k) exemption:

> The effect of the § 207(k) partial exemption is to soften the impact of the FLSA's overtime provisions on public employers in two ways: it raises

> the average number of hours the employer can require law enforcement and fire protection personnel to work without triggering the overtime requirement, and it accommodates the inherently unpredictable nature of firefighting and police work by permitting public employers to adopt work periods longer than one week.

*O'Brien v. Town of Agawam*, 350 F.3d 279, 290 (1st Cir. 2003). Previously, under 29 C.F.R. § 553.212, individuals like Plaintiff who spent more than twenty percent of her working time performing nonexempt activities did not fall under the Section 207(k) overtime exemption. In 1999, Congress amended the FLSA to "clarify the overtime exemption for employees engaged in fire protection activities." Pub. L. No. 106-151, 113 Stat. 1731(codified as amended at 29 U.S.C. § 203(y)). Under 29 U.S.C. § 203(y), the following employees are, by definition, considered to be involved "in fire protection activities" for the purpose of the Section 207(k) exemption:

> an employee, including a firefighter, paramedic, emergency medical technician, rescue worker, ambulance personnel, or hazardous materials worker, who . . . is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a municipality, county, fire district, or State; and is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.

Accordingly, to fall within the definition, an employee must: (1) be trained in fire suppression; (2) have the legal authority to engage in fire suppression; (3) have the responsibility to engage in fire suppression; (4) be employed by a fire department of a municipality, county, fire district, or state; ***and*** (5) be engaged either (i) in the prevention, control, and extinguishment of fires, ***or*** (ii) in the response to emergency situations where life, property, or the environment is at risk. See *Huff v. DeKalb County, Ga.*, 516 F.3d 1273, 1279 (11th Cir. 2008).

Here, Plaintiff does not dispute that she was employed as a Firefighter/Paramedic; that she trained in fire suppression; that she had the legal authority to engage in fire suppression; and that she was employed by a fire department of a county. (ECF No. 40 at 8.) Thus, as to the first part of § 203(y), elements (1) through (4), the remaining issue is whether plaintiff had the responsibility to engage in fire suppression.

### Responsibility to Engage in Fire Suppression

The Fifth Circuit Court of Appeals and the Eleventh Circuit Court of Appeals have held that Section 203(y) renders 29 C.F.R. § 553.212 obsolete. *Gonzalez v. City of Deerfield Beach, Fla.*, 549 F.3d 1331, 1336 (11th Cir. 2008); *McGavock v. City of Water Valley, Miss.*, 452 F.3d 423, 428 (5th Cir. 2006). As the Fifth Circuit explained, "The only purpose of Congress in amending the statute that is clear to us, is that it intended all emergency medical technicians (EMTs) trained as firefighters and attached to a fire department to be considered employees engaged in fire protection activities even though they may spend one hundred percent of their time responding to medical emergencies." *McGavock*, 452 F.3d at 427.

The Third, Eight, and Ninth Circuits, on the other hand, consider responsibility under section 203(y) to require "some real obligation" for fire suppression. *See Lawrence v. City of Phila.*, 527 F.3d 299, 312 (3d Cir. 2008); *Zimmerli v. City of Kansas City, Mo.*, 996 F.3d 857 (8th Cir. 2021); *Cleveland v. City of Los Angeles*, 420 F. 3d 981 (9th Cir. 2005), *cert. denied* 126 S.Ct. 1344 (2006).

The Fourth Circuit has not yet analyzed this issue, but another judge in this District has touched on this issue. Specifically, in *Regan v. City of Hanahan*, Judge Gergel held that the Court "need not conduct a factor-by-factor analysis to determine whether Plaintiffs

5

had the responsibility to engage in fire suppression" because "it is abundantly clear that they did." No. 2:16-CV-1077-RMG, 2017 WL 2303504, at *3 (D.S.C. May 26, 2017) (ruling on a motion for conditional class certification). In *Regan*, the plaintiffs were dual-function paramedic firefighters, and the majority of plaintiffs' collective testimony reflected that most of them were "rarely assigned to the fire truck," but if they were, they were expected "to engage in fire suppression." *Id.* at *2. One plaintiff testified that he "almost always" was assigned to ambulance, and another testified that he "sometimes engaged in fire suppression one time per month." *Id.* Each plaintiff testified that their responsibilities included fire suppression. *Id*. Based on this evidence, the court found that plaintiffs "actually engaged in fire suppression at various intervals." *Id.*

Here, Plaintiff testified that while employed with the County as a Firefighter/Paramedic, she was assigned to the ambulance performing medical functions 90 percent of the time.[1] (Pl. Dep 21:1-14; 32:7-13; 35:5-7.) She testified that she responded to some fire calls and was sometimes in the fire truck and has driven the firetruck in response to a fire call. (Pl. Dep. 41:17-25.) While on the scene of a structure fire, she testified that she has filled the role of incident commander[2] and pump operator,[3] and she has actually gone into a structure to fight a fire. (Pl. Dep. 42:1-44:12.) On those occasions where she responded to a fire call in an ambulance, she testified that there

---

[1] Plaintiff testified that "more of the call volume [wa]s medical . . . [and] that's what [she was] dispatched and responded to the most" during her employment. (Pl. Dep. 53:22-54:16.) Notably, the majority of the calls received by the County's fire and rescue service were medical. (*See* Thomas Andrew Williams Dep. 10:1-14.)

[2] Plaintiff confirmed that typically everyone who is in fire service will serve as an incident commander, as this role is assumed by the first person to arrive on the scene no matter their level of certification. (Pl. Dep. 43:6-10; Shannon Smith Dep. 31:16-24.) The incident commander is responsible for assigning roles to the other people who arrive on the scene, and the incident commander may change based on the complexity and growing needs of the incident. (Pl. Dep. 44:1-3; Smith Dep. 31:18-32:7.)

[3] Plaintiff confirmed that a pump operator is responsible for getting the water from the source on scene to the hose(s) to fight the fire. (Pl. Dep. 25:17-24.)

6

were times when she was asked to put on her turn out gear—which she testified she carried everywhere she went—and to assist with fighting the fire. (Pl. Dep. 45:1-46:3; 46:19-24 (further testifying that it "just depended on what the incident commander had tasked you to do").) As to the frequency in which that happened, Plaintiff testified that she could "probably count on two hands the time[s] that [she] actually fought fire," but if the need arose or she was asked while she was on the scene performing medical functions, she could have, would have, and was expected to engage in fire suppression activities. (Pl. Dep. 53:25-54: 1; 58:8-59-3.) On cross-examination, Plaintiff first testified that she did not know but then estimated that out of the 1,960 calls on average that she received during her employment with the County, 12 of them resulted in her actually performing fire suppression activities. (Pl. Dep 72:2-73:2.)

Plaintiff was also clearly trained in fire suppression. (Pl. Dep. 47:13-50:9.) To obtain and keep her job with Jasper County Fire and Rescue, she was required to hold a Firefighter Level II certification, which is necessary to fight structure fires in South Carolina. (Pl. Dep. 9:6-7; 41:12-16. Russell Wells Dep. 33:1-11.) Her resume also reflects that she had certifications in hazardous materials operations, Marine Firefighter II, and Fire Instructor I. (Pl. Dep 10:1-18.) As a Fire Instructor I, Plaintiff was capable of training firefighters. (Pl. Dep. 10:19-22.) She also held certifications that allowed her to drive a firetruck and operate the fire pump. (Pl. Dep. 25:11-24; 27:5-16.)

After review, the Court agrees with Judge Gergel and concludes that it need not conduct a factor-by-factor analysis to determine whether Plaintiff had the responsibility to engage in fire suppression because her deposition testimony makes it abundantly clear that she did. (*See* Pl. Dep. 73:17-20 ("Q: All right. But you don't deny that if you were

7

called on to [engage in fire suppression work], that [it] was your duty and your responsibility to do the fire suppression work? A: **That's correct.** That just didn't happen very often.") (emphasis added).) See *Huff*, 516 F.3d at 1281 (noting that "[t]his "responsibility" is a forward-looking, affirmative duty or obligation that an employee may have at some point in the future"). Like the testimony in *Regan*, Plaintiff testified that she mostly was assigned to the ambulance, mostly carried out emergency medical personnel tasks, and only sometimes engaged in fire suppression activities. Further, if assigned to do so or called upon to do so while performing medical-related activities, Plaintiff conceded that she had an obligation and responsibility to engage in fire suppression. *Compare Regan*, 2017 WL 2303504 (finding that the evidence is abundantly clear that plaintiffs had the responsibility to engage in fire suppression), *with Patterson v. Dallas/Fort Worth Int'l Airport Bd.,* 490 F. Supp. 3d 1034, 1045 (N.D. Tex. 2020) (finding plaintiffs were not employees in fire protection activities where there was no evidence, "other than the odd training exercise," under which plaintiffs might have been required to engage in fire suppression and where plaintiffs were "assigned exclusively to MICUs or Trauma Unit 611, neither of which held any fire rescue or firefighting equipment").

Plaintiff urges this Court to rely on the Ninth Circuit's decision in *Cleveland*, stating that it "is parallel to" the instant facts. (ECF No. 40 at 9.) However, upon close review, the Court finds *Cleveland* readily distinguishable. In *Cleveland*, the Ninth Circuit determined that cross-trained firefighter/paramedics had no responsibility to engage in fire suppression under section 203(y) where the evidence indicated that they did not carry fire suppression breathing equipment in their paramedic ambulance, were not expected to

8

wear fire protection gear at fire scenes, did not assist with any fire suppression, and were dispatched only to perform medical services.

In stark contrast, the evidence before this Court reveals that Plaintiff had sufficient fire suppression responsibility under section 203(y): (1) she always had her turn out gear on the ambulance; (2) there were times in which she was asked to put her gear on and assist with fighting a fire; (3) she had performed the role of incident commander and pump operator in response to a fire call; (4) she could and did drive a firetruck in response to a fire call; (5) she responded to both medical and fire calls; and (5) while the majority of her time was spent responding to medical calls and performing medical services, if assigned to or called upon to perform fire suppression while on the scene of a fire, she engaged in fire suppression activities. (Pl. Dep. 41:17-42:13; 43:1-5; 45:7-12; 45:25-46:3; 73:11-21.) Because the facts in *Cleveland* differ significantly from those in the case at hand, the Court does not find *Cleveland* persuasive in determining whether Plaintiff was "responsible" for fire suppression under § 203(y).

The Court also finds that defining "responsibility" as the duty to perform an action if it is part of one's job to do so comports with the plain meaning of the term and is in accordance with § 203(y)'s statutory framework. When construing a federal statute, "words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. U.S.,* 444 U.S. 37, 42 (1979). The ordinary meaning of "responsibility" is "the state or fact of being responsible." *The Random House College Dictionary Revised Edition,* 1125 (1988). Responsible is defined as "answerable or accountable, as for something within one's power or control." *Id.* The dictionary definition of "responsibility" does not require the actor to actually **perform** her duties. Rather, it merely requires the

9

actor to be **accountable** for something within her power or control. Accordingly, defining "responsibility" as the duty to perform an action if it is part of one's job to do so comports with the plain meaning of the word. Further, requiring the County's dual Firefighter/Paramedics to actually engage in fire suppression while assigned to an ambulance would contradict subsection two of § 203(y) which requires employees to engage in fire suppression *or* respond to emergency situations.

In sum, the Court finds in favor of the County on this issue and holds that Plaintiff was "responsible" for fire suppression under § 203(y) during her employment with the County.

### Engaged in the Prevention, Control, or Extinguishment of Fires, OR Engaged in the Response to Emergency Situations Where Life, Property, or the Environment Is at Risk

As just noted, the second part of § 203(y) requires that employees be engaged in either fire prevention and suppression *or* respond to emergencies. Plaintiff contends that she was not engaged in either and, therefore, does not meet the second part of § 203(y). (ECF No. 40 at Section II.) The entirety of her argument is that

> out of the thousands of calls to which she was dispatched, she actively engaged in fire suppression *three (3) times.* Although [she] did at certain times respond to calls where life support was needed or a hazardous condition existed. [sic] The vast majority of calls turned out to be non-dangerous in nature and less than one-third involved life support of a hazardous condition. Further, A [sic] huge part of [her] role had nothing to do with emergency situations at all.

(*Id.*) (emphasis is original). In sum, Plaintiff contends that she did not engage in fire prevention and suppression or respond to emergencies because most of the calls received by the County's fire and rescue service where non-emergency medical calls.

The Court finds Plaintiff's argument without merit. Based on the testimonial evidence set forth above, there is no genuine dispute that Plaintiff actually engaged in fire prevention and suppression – she sometimes drove the fire truck, has operated the fire pump, and has put on her turn out gear and entered a structure on fire. There is no requirement in the statute that Plaintiff engage in fire prevention and suppression with any specified frequency. Moreover, the Court finds that Plaintiff "respon[ded] to emergency situations where life . . . [wa]s at risk. § 203(y)(2). Indeed, Plaintiff testified that her job duties included responding to emergency medical calls, to include calls where someone was dealing with a possible life-threatening situation, such as a heart attack, difficulty breathing, a stabbing, or a fall. (Pl. Dep. 39:19-41:11 (testifying further that she did experience losing a patient).) Thus, even assuming *arguendo* that Plaintiff did **not** engage in fire prevention, control, and suppression, Plaintiff would still fall within the exemption's coverage because § 203(y) phrases these requirements in the disjunctive. Accordingly, the Court finds no genuine dispute that Plaintiff qualified for the partial overtime exemption under section 7(k) of the FLSA.

## CONCLUSION

Based on the foregoing, the Court denies Plaintiff's motion for summary judgment (ECF No. 40) and grants Jasper County's motion for summary judgment (ECF No. 39.)

**IT IS SO ORDERED.**

/s/ *Bruce Howe Hendricks*
United States District Judge

July 30, 2024
Charleston, South Carolina